IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| SALVATORE ROSS, | ) | |
|---|---|---|
| Petitioner | ) | |
| vs. | ) | Civil Action No. 07-97 |
| | ) | Judge Nora Barry Fischer/ |
| THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA; THE DISTRICT ATTORNEY OF THE COUNTY OF FAYETTE; MICHAEL KRYSEVIG, | ) | Magistrate Judge Amy Reynolds Hay |
| Respondents | ) | |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is recommended that the habeas petition filed pursuant to 28 U.S.C. § 2254 be dismissed and that a certificate of appealability be denied.

II. REPORT

After a jury heard all of the evidence against him, Salvatore Ross ("Petitioner") was convicted of first degree murder in the shooting death of his wife. Because he has failed to carry his burden to show that the state courts' dispositions of his claims were contrary to or an unreasonable application of then-extant Supreme Court law, his petition should be dismissed.

**A. Relevant Factual and Procedural History**

The following is an account of the evidence against Petitioner adduced at trial as summarized by the PCRA Court in its opinion denying PCRA relief.

> The defendant and the victim, Dorothy Ross, were husband and wife

having been married on July 15, 1994. (Trial 398.) Prior to July 15, 1999, the Defendant, the victim, and her seven-year-old son had resided in the marital residence, a mobile home, located at R. D. #2 Box 207, Hardy Hill, Dunbar, Fayette County, Pennsylvania.

During the early morning hours of July 15, 1999, defendant and the victim had an argument during which defendant admits that he struck his wife. (Trial 401, 404, 405.) Defendant was concerned about his wife's relationship with another man, Charles Finley a/k/a Shake. (Trial 405-409.) On the morning of July 15, 1999, the victim left for work and did not return to the marital home but instead, moved with her son into the home of Dave Pearce and Deanna Pearce in Van Meter, Rostraver Township, Westmoreland County, Pennsylvania. (Trial 62.) The victim continued to live in the Pearce home until the date of her death, July 23, 1999. (Trial 63.)

On July 23, 1999, the victim made arrangements with the defendant to retrieve her and her son's personal belongings from the Hardy Hill residence. (Trial 126, 379) The victim together with Deanna Pearce traveled to the marital residence in Deanna Pearce's Blazer followed by the victim's brothers, Jack Whipkey and Jake Whipkey in Jake's pickup truck. (N.T. 66-67). They arrived at the Hardy Hill residence at about 7:00 P.M. At which time defendant was outside talking with Timothy Sines. (Trial 66, 133.) The victim and her companions began packing belongings in bags and boxes which were then loaded into the pickup truck. (Trial 67.) At about 8:50 P.M., the victim and the defendant were in the back bedroom of the trailer. (Trial 71, 172, 173.) Deanna Pearce heard them arguing and heard the defendant yell "Why is everybody lying to me about Shake?" She then heard the victim say, "Please, Sam, don't" and within seconds heard a gunshot. (Trial 71-71.) Deanna got up and began walking toward the living room door. The defendant came out of the bedroom with a gun in his hand pointed at Deanna and stated "if you'ns don't leave, I'll shoot you'ns, too." (Trial 73.) Deanna walked out the door and started toward her car. Defendant then came to the door of the trailer and pointed the gun at the deceased's two brothers ordering them off the property and stating "if you'ns don't leave I'll shoot you'ns too." (Trial 74, 176.) Deanna and the deceased's brothers got into their vehicles, pulled out of the driveway and drove down the road. (Trial 74, 76.) Jack Whipkey observed the defendant then enter a vehicle and drive away from the marital home. (Trial 177.) Jack Whipkey ran back to the residence, called 911, went into the bedroom and found his sister lying face-down crumpled up on the floor. (Trial 178, 179.)

Fayette Emergency Medical Services ambulance's paramedic, Carla Nalepka, was dispatched and arrived at the residence at approximately 9:17 P.M. Nalepka began to treat the deceased for a gunshot wound to the head. (Trial 224, 225.) The victim's heart stopped at 9:40 P.M. and all resuscitation efforts were terminated at 9:53 P.M. (Trial 230, 231.). Pathologist Cyril Wecht indicated the victim died as a result of a gunshot wound to the head which entered behind the

left ear and exited in the upper right forehead. (Trial 314.) He described the entrance as a near-contact wound. The muzzle of the gun was not pressed against the scalp but was probably a half inch to an inch from the head when it was discharged. (Trial 316.) He described the injury caused by the gunshot as a fatal wound. (Trial 321.)

      At or about 11:00 P.M. July 23, 1999, the defendant in the company of his father surrendered himself into the custody of the state police. Defendant's father turned over to the police the pistol used in the shooting. The weapon was described by the firearms expert, Corporal Jack Wall, as a Davis .380 semi-automatic pistol. (Trial 353.) Ballistics testing confirmed that the discharged mutilated metal jacketed bullet recovered at the scene was discharged from the defendant's Davis .380 semi-automatic pistol. (Trial 359.)

Dkt. [4-4] at 28 to 31 (PCRA Court opinion).

After his trial, Petitioner was sentenced to life in prison without the possibility of parole for the first degree murder of his wife. At trial Petitioner was represented by privately retained counsel. Petitioner took the stand and testified in his own defense. The theory of the defense was that of self defense, Petitioner claiming that his wife came at him with the gun and she was shot in the struggle to remove the gun from her. See Dkt. [4-4] at 16 to 17; id., at 38 ("Defendant claimed that he did not pull the trigger which discharged the fatal shot causing the victim's death. According to the defendant, the victim pointed the .380 caliber revolver at him. Acting in self defense, he grabbed her left wrist and forced it backwards behind her head where the gun discharged. (Trial 388-391.)[.]"[1] The jury apparently discredited Petitioner and believed the Commonwealth's evidence of the events.

On direct appeal to the Superior Court, Petitioner was represented by the Public

---

[1] See also Dkt. [4-4] at 106 (Superior Court PCRA opinion)("At trial Ross claimed self-defense. He claimed his estranged wife pulled the handgun on him and, as they struggled for it, he somehow wound up pointing it at the back of her head and the gun discharged. The jury did not believe Ross' version of the events and convicted him of first degree murder.").

3

Defender's office.[2] The Superior Court denied relief. The Supreme Court of Pennsylvania, denied the petition for allowance of appeal.

Petitioner filed a PCRA petition. After a hearing the PCRA court denied relief. Petitioner was represented by new counsel at the PCRA trial court proceedings.[3] Counsel then

---

[2] In the appeal to the Superior Court, the following issues were raised:

1. WHETHER THE COMMONWEALTH FAILED TO PROVE THE NECESSARY ELEMENT OF SPECIFIC INTENT?
2. WHETHER THE COMMONWEALTH FAILED TO PROVE THE NECESSARY ELEMENT OF MALICE?
3. WHETHER APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR THE FOLLOWING REASONS:
a. TRIAL COUNSEL FAILED TO INVESTIGATE A COMMONWEALTH WITNESS' MOTIVE [TO LIE ON THE STAND],
b. APPELLANT'S COUNSEL FAILED TO INVESTIGATE [AND CALL WITNESSES WHO WOULD HAVE COUNTERED TESTIMONY THAT HE BEAT HIS WIFE]
c. TRIAL COUNSEL FAILED TO INVESTIGATE DEALS OR PLEA BARGAIN,
d. TRIAL COUNSEL FAILED TO PROPERLY PREPARE APPELLANT FOR TRIAL, AND
e. [TRIAL] COUNSEL FAILED TO OBJECT TO THE COMMONWEALTH'S INFLAMMATORY ARGUMENT;
4. WHETHER THE DISTRICT [ATTORNEY], IN CLOSING ARGUMENT, [APPEALED] TO THE EMOTION OF THE JURY RATHER THAN THE EVIDENCE?
5. WHETHER THE COURT ERRED IN PERMITTING THE HYPOTHETICAL OF THE COMMONWEALTH.

Dkt. [4-3] at 86 to 87.

[3] Petitioner's counsel filed a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. In that Rule 1925(b) statement the following issues were raised:

1. Whether the Trial [i.e., PCRA] Court erred in denying the defendant's PCRA Petition based upon ineffective assistance of counsel claims as follows:
a. Trial counsel was ineffective for failing to investigate and interview witnesses and call the same at the defendant's trial, whose testimony could have proved beneficial to defendant's trial.
b. Trial counsel was ineffective for failing to impeach the credibility of the prosecution witness, Timmy Lee Sines, as he committed perjury, and trial counsel erred in not elaborating or effectively cross-examining the discrepancies in the witness's testimony.
c. Trial counsel was ineffective for failing to spend sufficient time preparing the case with the defendant prior and during the trial.
d. Trial counsel was ineffective for failing to investigate defendant's mental health psychosis, and this failure, therefore, caused the defendant to suffer severe prejudice in his case. Furthermore, presentation of evidence of the same may have negated defendant's intent and/or

4

filed a Pa.R.App.P. 1925(b) statement of matters complained of on appeal. Thereafter, Petitioner sought to proceed pro se on appeal, and after a hearing was conducted in the PCRA Court to determine whether Petitioner could proceed pro se on appeal, the PCRA court permitted counsel to withdraw and permitted Petitioner to proceed on appeal pro se. Dkt. [4-4] at 106.

Petitioner then filed a pro se brief in the Superior Court wherein he raised a myriad of issues that had not been raised below in the PCRA trial court. The Superior Court denied relief. In affirming the PCRA trial Court, the Superior Court adopted the opinion of the PCRA court as to the five issues raised before the PCRA trial court and in the Rule 1925(b) statement. Dkt. [4-4] at 105 ("After a thorough review of the official record, submissions by the parties and relevant law, we affirm on the basis of the trial court opinion."). As to the myriad of issues that Petitioner raised that were not raised or not properly raised in the PCRA trial court, the Superior Court found them all to have been waived for failure to be raised in the trial court and so such issues could not be raised for the first time in an appeal. Dkt. [4-4] at 106 to 107. In the alternative, the Superior Court dismissed these issues as being meritless, and concluded that "[e]ven so, we have read the claims put forth by Ross and independently reviewed the record. We conclude that none of the claims are meritorious."). Dkt. [4-4] at 107. Petitioner did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

Petitioner then filed the instant habeas petition pro se. The issues he raises herein are as

---

culpability.
E. Trial counsel was ineffective for failing to investigate defendant's claim that he was extremely intoxicated from alcohol, prior to and after, the act was committed, which would have been relevant to negate the element of intent.

Dkt. [4-4] at 33 to 34.

follows:

>**GROUND ONE:** Violation of the 5th & 14th Amendments to the United States Constitution. . . . Respondent failed to prove the necessary element of intent for first degree murder.
>**GROUND TWO**: Violation of the 5th & 14th Amendments to the United States Constitution. . . . . Respondent failed to prove the necessary element of malice.
>**GROUND THREE**: Violation of the 5th, 6th, & 14th Amendments to the United States Constitution. . . . Trial counsel was ineffective for failing to investigate witnesses [sic] motive; failed to investigate witnesses; failed to investigate deal or plea bargain; failed to properly prepare Petitioner for trial; and, failed to object to the Respondent's inflammatory argument.
>**GROUND FOUR**: Violation of the 5th & 14th Amendments to the United States Constitution . . . . Respondent in Closing Argument, appealed to the emotion of the jury rather than the evidence.
>**GROUND FIVE**: Violation of the 5th & 14th Amendments to the United States Constitution . . . . Trial court erred in permitting the Hypothetical of the Respondent.
>**GROUND SIX**: Violation of the 5th, 6th & 14th Amendments to the United States Constitution . . . . False or perjured testimony used by the Respondent's witness [i.e., Timothy Sines[4]].
>**GROUND SEVEN**: Violation of the 5th, 6th & 14th Amendments to the United States Constitution. . . . Trial Counsel was ineffective for his failure to investigate defense witnesses [such as witnesses who could have testified to Petitioner's state of intoxication on the date of the murder and/or a psychiatrist who could have testified as to Petitioner's alleged psychosis associated with jealousy syndrome].
>**GROUND EIGHT**: Violation of the 5th, 6th, and 14th Amendments to the United States Constitution. . . . Trial counsel was ineffective for his failure to present "Diminished Capacity" at trial [i.e., either evidence of intoxication or evidence of psychosis associated with jealousy syndrome].
>**GROUND NINE**: Violation of the 5th, 6th & 14th Amendments to the United States Constitution. . . . Trial counsel was ineffective for his failure to disclose Petitioner's mental incapacity [to commit the crime] at trial [i.e., either evidence of intoxication or evidence of psychosis associated with jealousy syndrome].

Dkt. [1] at 6 to 12. The Respondents filed an answer. Dkt. [4]. The case is now ready for disposition.

### B. Applicable Legal Principles

---

[4] Certain of Petitioner's claims are not clearly stated. Based on a review of the record, the Court has added material in the brackets in an attempt to clarify these claims.

**AEDPA Is Applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was enacted on April 24, 1996. Because petitioner's habeas petition was filed after AEDPA's effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law. 28 U.S.C. §2254(a). Smith v. Phillips, 455 U.S. 209 (1982); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir. 1991). Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991).

A judgment of conviction carries with it a presumption of regularity in federal court. Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996)("On collateral attack. . . ., the state receives the presumption of regularity and all reasonable inferences.")(quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)); Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Given this presumption of regularity, it is petitioner's burden to establish, at the very least by a

7

preponderance of the evidence,[5] that his constitutional rights were violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.").

### AEDPA's Standard of Review

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e). Section 2254 (d) and (e) provide as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>  (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Moreover, it is petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo v. Superintendent, SCI-

---

[5] To the extent that petitioner is challenging the factual determinations of the state courts, he has a burden to rebut the presumption of correctness of those factual findings by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1).

8

Albion, 171 F.3d 877, 888 - 89 (3d Cir. 1999)(en banc).

**C. Discussion**

Instantly, other than simply listing the issues raised, Petitioner makes no argument whatsoever that the state courts' disposition of his claims constituted a decision that was contrary to or an unreasonable application of any then-extant Supreme Court precedent, nor that the factual determinations of the state courts were unreasonable. Given that it is Petitioner's burden,[6] and he failed to carry that burden, for this reason alone his petition should be denied.

Alternatively, after independent review of those claims that the state courts addressed on the merits,[7] this Court concludes that the state courts' disposition of the Petitioner's claims did not constitute decisions that were either contrary to or an unreasonable application of then-extant

---

[6] Edsall v. Lazaroff, 208 F.3d 213 (Table), 2000 WL 263273, at *1 (6th Cir. 2000)("Upon habeas review the petitioner has the burden of establishing that the adjudication of his claim by the state courts either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.").

[7] Grounds One through Four were addressed on the merits by the trial Court's opinion in support of the judgment of sentence. Dkt. [4-3] at 50 to 66. In addition, the Superior Court, on direct appeal, addressed Petitioner's Grounds One through Five in its opinion. Dkt. [4-3] at 83 to 99. The Superior Court addressed Grounds One through Five on the merits except for two claims, namely, the claim that trial counsel erred in not cross examining Timothy Sines with regard to his motive for testifying against Petitioner which is the first sub issue under Ground Three and which the Superior Court held to be waived because it was not raised in Petitioner's Rule 1925(b) statement and counsel did not raise his own ineffectiveness for failing to raise the issue there). Dkt. [4-3] at 91. However, this very issue was addressed on the merits in the PCRA trial court opinion. Dkt. [4-4] at 45 to 46. The second issue not addressed on the merits by the Superior Court was Ground Five, which complained that the trial court erred in permitting an hypothetical question to be posed. The Superior court held this issue to have been waived due to it not being raised in the Rule 1925(b) statement of matters complained of on appeal. Dkt. [4-3] at 98 to 99. This Court addresses this issue below. In addition, Grounds Six through Nine were addressed on the merits in the PCRA trial court's opinion, Dkt. [4-4] at 27 to 49, which the Superior Court adopted as its own in addressing these issues. Dkt. [4-4] at 105 ("we affirm on the basis of the trial court opinion").

9

Supreme Court precedent, nor did those state court decisions render an unreasonable determination of the facts.

The sole claim not addressed on the merits by the state courts was Ground Five, i.e., that the trial court erred in permitting a hypothetical question to be posed to a Commonwealth witness. Petitioner does not elaborate on this claim but the Superior Court gave some insight to this claim when it held the claim to have been waived due to it not being included in the Rule 1925(b) statement. The Superior Court described this issue as follows: "Appellant asserts that the trial court erred in permitting the Commonwealth's gun residue expert to answer a hypothetical question when the hypothetical was not based entirely on evidence of record. More, specifically, Appellant argues that the expert was asked if gun residue would be found on the victim's hand if the victim had her hand up near her head at the time Appellant shot the gun. As only Appellant and victim were in the bedroom at the time, Appellant asserts that there was no evidence that the victim put her hand up near her head." Dkt. [4-3] at 98 to 99.

The Superior Court refused to address this issue on the merits because it found this issue to have been waived for failure to include it in the Rule 1925(b) statement. We find that this issue is procedurally defaulted.

The rule that an issue is waived if it is not raised in the Rule 1925(b) statement had been definitively established by Commonwealth v. Lord, 719 A.2d 306, 308 (Pa. 1998). That rule has been consistently applied since then and at the time of Petitioner's waiver, which the Court takes note of was not until sometime after December 8, 2000, the date the notice of appeal in the

Superior Court was filed.[8] See, e.g., Commonwealth v. Johnson, 771 A.2d 751 (Pa. 2001); Riley v. Foley, 783 A.2d 807, 813 n. 6 (Pa. Super. 2001) (finding waiver in child support case for failure to include issue in Rule 1925(b)[9] statement); Commonwealth v. Touw, 781 A.2d 1250, 1255 (Pa. Super. 2001); Commonwealth v. Thompson, 778 A.2d 1215, 1222 n.5 (Pa. Super. 2001); McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 658 (Pa. Super. 2000) (holding that failure to include an issue in a Rule 1925(b) statement waives that issue for purposes of appellate review).

Because the rule of waiver for failing to raise an issue in a Concise Statement is both independent and adequate, Petitioner has procedurally defaulted this claim. Buck v. Colleran, 115 Fed.Appx. 526 (3d Cir. 2004) (holding failure to comply with Rule 1925(b) constitutes a procedural default); Konya v. Meyers, No. Civ.A. 03-4065, 2004 WL 1171730, *3 (E.D. Pa. May 24, 2004)("due to petitioner's failure to comply with Pennsylvania's Rule 1925(b), petitioner's claims are procedurally defaulted under Pennsylvania law."); Willis v. Varner, No. CIV.A. 03-1692, 2004 WL 1109780, *7 (E.D. Pa. May 13, 2004)("The Superior Court's conclusion that Petitioner's due process claim was waived for failure to include it in Petitioner's 1925(b) statement is based upon an adequate and independent state procedural rule.").

Hence, Petitioner can have this procedurally defaulted claim addressed only if he carries

---

[8] The Court takes judicial notice of (1) the dockets of the Superior Court which indicate that the notice of appeal was filed on December 8, 2000 and (2) of the fact the order directing a Rule 1925(b) statement occurs only after a notice of appeal has been filed. See Pa.R.A.P. 1925. The Superior Court dockets are available at

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=2&dkt=2114%20WDA%202000&ST=12/19/2007%2012:12:09%20PM

[9] The Concise Statement of Matters Complained of On Appeal is sometimes referred to as the Rule 1925(b) statement. See Pa.R.App.P. 1925(b).

his burden to establish cause and prejudice for the default or if carries his burden to establish a miscarriage of justice.[10] Petitioner has not shown either.

It could be argued that his direct appeal counsel was ineffective for failing to raise this issue and hence, such alleged ineffectiveness serves as cause to excuse Petitioner's procedural default. Of course ineffectiveness of counsel, where, as here, there existed a Federal Constitutional right to counsel at the relevant time, i.e., post sentence/direct appeal, may serve as "cause" to excuse a procedural default. Murray v. Carrier, 477 U.S. 478 (1986) However, as explained by the Court in Murray v. Carrier, 477 U.S. at 488-89, "the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to

---

[10] In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted). In other words, proving prejudice requires a federal habeas petitioner to produce evidence that "the outcome [in the state proceedings] was 'unreliable or fundamentally unfair' as a result of the alleged violation of federal law." Ford v. Stepanik, No. Civ.A. 97-2116, 1998 WL 297626, at *3 (E.D. Pa. June 2, 1998). A second exception to procedural default permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts v. Vaughn, 228 F.3d at 193, the Court explained this exception as follows:
> if the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [Murray v. Carrier, 477 U.S. 478] at 496 [(1986)]. Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. Schlup v. Delo, 513 U.S. 298, 326 (1995).

establish cause for a procedural default." Petitioner never raised the issue of the ineffective assistance of his direct appeal counsel for failing to raise this specific issue in his PCRA petition or in his Rule 1925(b) statement in his appeal of the PCRA court's denial of relief. Hence, Petitioner has procedurally defaulted this claim of cause. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Nor can Petitioner show cause for procedurally defaulting this specific claim of direct appellate counsel's ineffectiveness for failing to raise the issue. The only claim of excuse that Petitioner would now have for failing to raise this issue before the PCRA Court is that his PCRA attorney was ineffective during the PCRA proceedings for failing to raise in front of the PCRA trial court the issue of direct appeal counsel's ineffectiveness. However, claims of ineffectiveness of post conviction relief counsel cannot serve as cause to excuse a procedural default because there is no federal constitutional right to counsel at the stage of state post conviction proceedings. Coleman v. Thompson, 501 U.S. 722, 757 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas."); Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel"). Accordingly, Petitioner has not shown, nor does he apparently have "cause" for his procedural defaults.

Nor would Petitioner be able to establish a miscarriage of justice, as there is overwhelming evidence of his guilt and he cannot possibly establish his actual innocence of the

13

crime.

In the alternative, even if this Court were to address the issue of the hypothetical question claim on the merits, it would find that assuming, without deciding, it was error to have permitted the hypothetical question, the error was harmless beyond a reasonable doubt. Accordingly, this issue does not merit Petitioner relief.

### D. Certificate of Appealability Should Be Denied

A certificate of appealability is required by 28 U.S.C. § 2253(c) before a petitioner who has been denied relief may appeal to a court of appeals. As amended by AEDPA, section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." In order to make a "substantial showing of the denial of a constitutional right," the habeas "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). It does not appear that reasonable jurists would find the recommended disposition, should it be adopted, to be debatable or wrong. Accordingly, a certificate of appealability should be denied.

III. CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties have until January 7, 2008, to file written objections to this Report. Any party opposing the objections shall have seven days therafter to file a response to any objections. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                         Respectfully submitted,

/s/ *Amy Reynolds Hay*<br>United States Magistrate Judge

Dated: 20 December, 2007

cc:    The Honorable Nora Barry Fischer
       United States District Judge

       Salvatore Ross
       EL-5615
       SCI Cresson
       P.O. Box A
       Cresson, PA 16699-0001

       All counsel of record via Notice of Electronic Filing